IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

CONGREGATION ZICHRON MOISHE,

      Plaintiff,

v.

VEREIT, INC.,
VEREIT OPERATING PARTNERSHIP, L.P.,
GLENN J. RUFRANO,
HUGH R. FRATER,
PRISCILLA ALMODOVAR,
DAVID B. HENRY,
MARY HOGAN PREUSSE,
RICHARD J. LIEB,
EUGENE A. PINOVER,
JULIE G. RICHARDSON, and
SUSAN E. SKERRITT,

      Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff Congregation Zichron Moishe ("Plaintiff"), by and through its undersigned counsel, for its complaint against defendants, alleges upon personal knowledge with respect to itself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action against VEREIT, Inc. ("VEREIT" or the "Company"), VEREIT's wholly owned and controlled operating partner, VEREIT Operating Partnership, L.P. ("VEREIT OP"), and the members of VEREIT's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities

Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which the Company will be acquired by Realty Income Corporation ("Realty Income") through Realty Income's subsidiaries Rams MD Subsidiary I, Inc. ("Merger Sub 1") and Rams Acquisition Sub II, LLC ("Merger Sub 2") (the "Proposed Transaction").

2. On April 29, 2021, VEREIT and Realty Income issued a joint press release announcing that they had entered into an Agreement and Plan of Merger (the "Merger Agreement"), dated April 29, 2021, to sell VEREIT to Realty Income. Under the terms of the Merger Agreement, each VEREIT stockholder will be entitled to receive 0.705 shares of Realty Income common stock for each VEREIT share they own (the "Merger Consideration"). Immediately following the closing, the companies expect to effectuate a taxable spin-off of substantially all of the office properties of both VEREIT and Realty Income into a new, self-managed, publicly traded real estate investment trust ("REIT") ("SpinCo"). Following the merger and the spin-off, Realty Income shareholders are expected to own approximately 70% and VEREIT shareholders are expected to own approximately 30% of both the combined company and SpinCo. The Proposed Transaction is valued at approximately $50 billion.

3. On June 4, 2021, Realty Income filed a Form S-4 Registration Statement (the "Registration Statement") with the SEC. The Registration Statement, which recommends that VEREIT stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (i) VEREIT's and Realty Income's financial projections and the financial analyses supporting the fairness opinion provided by the Board's financial advisor, J.P. Morgan Securities, LLC ("J.P. Morgan"); and (ii) potential conflicts of

interest faced by Company insiders. Defendants authorized the issuance of the false and misleading Registration Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, VEREIT's public stockholders will be irreparably harmed because the Registration Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. VEREIT operates and maintains forty-one of its commercial properties in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of VEREIT common stock.

9. Defendant VEREIT is a Maryland corporation with its principal executive offices located at 2325 E. Camelback Road, 9th Floor, Phoenix, Arizona 85016. VEREIT is a full-service real estate operating company which owns and manages one of the largest portfolios of single tenant commercial properties in the U.S. The Company's common stock is traded on the New York Stock Exchange under the ticker symbol "VER."

10. Defendant VEREIT OP is a Delaware limited partnership with its principal executive offices located at 2325 E. Camelback Road, 9th Floor, Phoenix, Arizona 85016. The Company is the sole general partner of VEREIT OP and has the full, exclusive and complete responsibility for VEREIT OP's day-to-day management and control. VEREIT is the holder of 99.9% of the common partnership interests in VEREIT OP (the "OP Units") as of December 31, 2020. VEREIT OP's 6.70% Series F Preferred Units are traded on the New York Stock Exchange under the ticker symbol "VER PRF."

11. Defendant Glenn J. Rufrano ("Rufrano") has been Chief Executive Officer ("CEO") and a director of the Company since April 2015.

12. Defendant Hugh R. Frater ("Frater") is Non-Executive Chairman of the Board and has been a director of the Company since April 2015.

13. Defendant Priscilla Almodovar ("Almodovar") has been a director of the Company since February 2021.

14. Defendant David B. Henry ("Henry") has been a director of the Company since September 2015.

15. Defendant Mary Hogan Preusse ("Preusse") has been a director of the Company

4

since February 2017.

16. Defendant Richard J. Lieb ("Lieb") has been a director of the Company since February 2017.

17. Defendant Eugene A. Pinover ("Pinover") has been a director of the Company since September 2015.

18. Defendant Julie G. Richardson ("Richardson") has been a director of the Company since April 2015.

19. Defendant Susan E. Skerritt ("Skerritt") has been a director of the Company since February 2021.

20. Defendants identified in paragraphs 11 to 19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21. Realty Income is a Maryland corporation with its principal executive offices located at 11995 El Camino Real, San Diego, California 92130. Realty Income is an S&P 500 company dedicated to providing stockholders with dependable monthly dividends that increase over time. It is structured as a REIT, requiring it to annually distribute at least 90% of its taxable income (excluding net capital gains) in the form of dividends to its stockholders. Over the past 52 years, Realty Income has been acquiring and managing freestanding commercial properties that generate rental revenue under long-term net lease agreements with commercial clients. At December 31, 2020, Realty Income owned a diversified portfolio of 6,592 properties doing business in 51 separate industries. Realty Income's common stock is traded on the New York Stock Exchange under the ticker symbol "O."

22. Merger Sub 1 is a wholly owned subsidiary of Realty Income.

23. Merger Sub 2 is a wholly owned subsidiary of Realty Income.

## SUBSTANTIVE ALLEGATIONS

**Company Background**

24. VEREIT is a full-service real estate operating company which owns and actively manages one of the largest portfolios of single-tenant commercial properties in the U.S. and has a business model of providing equity capital to creditworthy organizations in return for long-term leases on their properties. The Company's full-service real estate operations include portfolio management through strategic acquisitions and dispositions, property management, asset management and leasing.

25. The Company has 3,831 retail, restaurant, office and industrial real estate properties with an aggregate of 89.7 million square feet of which 97.9% was leased, with a weighted-average remaining lease term of 8.3 years. Of VEREIT's 3,831 properties, annualized rental income as a percentage of the total portfolio was approximately 45% retail, 20% restaurant, 17% office, 18% industrial and 0.1% other. VEREIT properties are located throughout the U.S. (including Puerto Rico) with the two highest concentrations in the Southeast and Midwest regions.

26. On May 4, 2021, the Board declared a quarterly dividend of $0.462 per share for the second quarter of 2021. The dividend will be paid on July 15, 2021 to common stockholders of record as of June 30, 2021.

27. On May 6, 2021, the Company announced its first quarter 2021 financial results and business highlights. Net income for the quarter ended March 31, 2021 increased $33.8 million to $120.7 million as compared to net income of $86.9 million for the same quarter in 2020, and net income per diluted share increased $0.16 to $0.50 for the quarter ended March 31, 2021, as compared to net income per diluted share of $0.34 for the same quarter in 2020. Adjusted Funds from Operations ("AFFO") attributable to common stockholders and limited partners for the

quarter ended March 31, 2021 increased $2.0 million to $183.0 million, as compared to $181.0 million for the same quarter in 2020. The Company also achieved rent collection of 99% during the quarter.

**The Proposed Transaction**

28.     On April 29, 2021, VEREIT and Realty Income issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> SAN DIEGO and PHOENIX, April 29, 2021 -- Realty Income Corporation (NYSE: O) ("Realty Income"), The Monthly Dividend Company®, and VEREIT, Inc. (NYSE: VER) ("VEREIT") today announced that the two companies have entered into a definitive merger agreement by which Realty Income will acquire VEREIT in an all-stock transaction, creating a combined company with an enterprise value of approximately $50 billion. Under the terms of the agreement, VEREIT shareholders will receive 0.705 shares of Realty Income stock for every share of VEREIT stock they own.
>
> Immediately following the closing, the companies expect to effectuate a taxable spin-off of substantially all of the office properties of both companies into a new, self-managed, publicly traded REIT ("SpinCo"). Following the merger and the spin-off, Realty Income will continue as the surviving public entity. Realty Income and former VEREIT shareholders are expected to own approximately 70% and 30%, respectively, of both Realty Income and SpinCo.
>
> The transactions are expected to be over 10% accretive to Realty Income's AFFO per share in year one, add meaningful diversification that further enables new growth avenues, strengthen cash flow durability, and provide significant financial synergies, particularly through accretive debt refinancing opportunities. Realty Income's growth strategy will remain focused primarily on high-quality, single-tenant net lease retail and industrial properties in the U.S. and U.K., leased to clients that are leaders in their respective businesses.
>
> "We believe the merger with VEREIT will generate immediate earnings accretion and value creation for Realty Income's shareholders while enhancing our ability to execute on our ambitious growth initiatives," said Sumit Roy, President and Chief Executive Officer of Realty Income. "Together, our company will enjoy increased size, scale, and diversification, continuing to distance Realty Income as the leader in the net lease industry. VEREIT's real estate portfolio is highly complementary to ours, which we expect to further enhance the consistency and durability of our cash flows."

"The objective of our management team from initiation in 2015 was to revitalize VEREIT and increase the value of the enterprise," said Glenn Rufrano, Chief Executive Officer of VEREIT. "We put an excellent team in place, enhanced the portfolio, created an investment-grade balance sheet and resolved all legacy issues. The board and management have concluded that a merger with Realty Income, the premier net lease company, will enable us to recognize the value created. The combined company provides all of our constituencies the opportunity to benefit from the advantageous cost of capital and growth potential generated by this transaction."

**Strategic and Financial Rationale**

- **Immediate AFFO per share accretion**. Relative to the $3.465 midpoint of Realty Income's 2021 AFFO per share guidance, the transaction is expected to be over 10% accretive to shareholders on an annualized, leverage-neutral basis.
- **Increased and diversified scale driving growth**. The complementary nature of each company's real estate portfolio results in greater diversification of client credit, industry, and geography, providing further runway for Realty Income to grow in its chosen verticals with best-in-class clients without compromising prudent concentration metrics.
- **Enhanced leadership amongst blue chip benchmarks**. Upon closing of the merger, Realty Income is expected to become one of the six largest REITs in the MSCI US REIT Index (RMZ) by equity market capitalization and among the top half of constituents in the S&P 500, resulting in increased weighting in major benchmark equity indices and further growing its net lease industry-leading trading liquidity.
- **Dividend stability**. Realty Income is one of only three REITs in the S&P 500 Dividend Aristocrats Index® for having increased its dividend every year for the last 25 consecutive years and the improved diversification effectuated through the merger is expected to further enhance the durability of Realty Income's dividend coverage. VEREIT's shareholders are expected to experience an immediate increase in the dividend upon closing of the merger. Dividend payments for both companies are expected to remain uninterrupted through the close of this transaction.
- **Fortress balance sheet and continued credit rating leadership in the net lease industry**. Realty Income is currently the only net lease REIT with A3/A- credit ratings from Moody's and S&P and intends to maintain target leverage (as defined as Net Debt and Preferred Equity / Adjusted EBITDAre) in the mid-5x area. Upon closing of the merger, Realty Income's enhanced scale and diversification are expected to be credit positives.
- **Cost of capital advantages amplified**. Realty Income's cost of capital advantage is driven by its superior credit ratings in the net lease industry and historical premium to NAV, which allows it to consistently grow AFFO per share while assembling a best-in-class real estate portfolio. Post-

merger, shareholders are expected to benefit from this cost of capital advantage applied towards a broader set of growth opportunities across its combined investment pipeline.

- **Attractive debt refinancing synergies**. As one of eight U.S. REITs with two credit ratings of at least A3/A- by Moody's and S&P, Realty Income is uniquely positioned to refinance VEREIT's upcoming debt maturities at materially lower rates in multiple currencies. Furthermore, Realty Income's accelerating investment activity in the U.K. further allows for significantly lower all-in borrowing costs in the high-grade unsecured bond market relative to the U.S. As of December 31, 2020, VEREIT had approximately $6 billion of outstanding debt at a weighted average interest rate of approximately 4% and a weighted average term to maturity of approximately 6 years. In addition, pro forma for previously disclosed activity in January 2021, VEREIT has approximately $373 million of outstanding preferred equity at a rate of 6.7%, which is freely prepayable at par.
- **Meaningful corporate cost synergies to further enhance scalability of platform**. On a run-rate basis, Realty Income expects to achieve estimated annualized corporate cost synergies of $45 - $55 million inclusive of stock-based compensation, and an estimated $35 - $40 million of annualized synergies on a cash basis. An estimated 75% of savings are expected to be achieved in the first 12 months post-closing. In 2020, Realty Income's G&A margin as a percentage of revenue (excluding tenant reimbursements) was approximately 4.7% and its 4Q20 annualized G&A as a percentage of gross real estate asset value was 0.32%. Both metrics were the lowest in the public net lease industry.

**Realty Income Pro Forma Metrics**

After giving pro-forma effect for the closing of the merger and assuming the anticipated spin-off of the office assets, Realty Income's shareholders will own a diversified global portfolio of approximately 10,300 primarily single-tenant, net lease commercial real estate properties located in 50 U.S. states, Puerto Rico and the U.K. In addition, utilizing reported portfolio metrics for each company as of December 31, 2020:

- Total portfolio annualized contractual rent is expected to be approximately $2.5 billion
- Approximately 83%, 14% and 3% of total portfolio annualized contractual rent is expected to be generated from retail, industrial, and other property types, respectively
- Approximately 45% of total portfolio annualized contractual rent is expected to be generated from investment grade clients
- The 10 largest clients are expected to be Walgreens (5% of annualized contractual rent), Dollar General (4%), Dollar Tree/Family Dollar (4%),

9

- FedEx (3%), 7-Eleven (3%), LA Fitness, (3%), Walmart/Sam's Club (2%), CVS Pharmacy (2%), Sainsbury's (2%) and BJ's Wholesale Clubs (2%)
- The 10 largest industries are expected to be Convenience stores (9% of annualized contractual rent), Grocery stores (8%), Dollar stores (8%), Drug stores (8%), Restaurants – casual dining (7%), Restaurants – quick service (7%), Health & Fitness (5%), Home improvement (4%), Theaters (4%), and Transportation services (4%)
- Realty Income expects to maintain leverage (as defined as Net Debt and Preferred Equity / Adjusted EBITDAre) of approximately 5.5x, supported by a $3.0 billion unsecured revolving credit facility and $1.0 billion commercial paper program

**"SpinCo" Pro Forma Metrics**

The planned spin-off of the office portfolio maintains Realty Income's preferred portfolio mix, consistent with its focused investment strategy of acquiring high quality real estate leased primarily to retail clients that have a service, non-discretionary, and/or low-price-point component to their business, and industrial clients that are primarily investment grade rated companies and leaders in their respective industries.

Upon completion of the planned spin-off, shareholders of both companies are expected to receive a stock distribution in a separate, publicly traded REIT, subject to customary conditions. The anticipated spin-off of substantially all of the combined companies' office properties is expected to result initially in a pure-play, self-managed portfolio of 97 domestic office properties.

In addition, utilizing reported portfolio metrics for each company as of December 31, 2020 and pro forma for closed transaction activity in 2021:

- Total portfolio annualized contractual rent is expected to be approximately $183 million
- Approximately 76% of total portfolio annualized contractual rent is expected to be generated from investment grade clients
- Top five largest clients are expected to be GSA (10% of annualized contractual rent), Cigna (7%), Merrill Lynch (6%), HealthNow (4%), and RSA (4%)
- Top five largest industries are expected to be Health care (17% of annualized contractual rent), Telecommunications (14%), Insurance (13%), Financial services (11%), and Government services (11%)
- Pro forma contractual rent collected in 4Q20 was in excess of 99%

Pursuant to the terms of the merger agreement, Realty Income may also seek to sell some or all of the combined companies' office properties, subject to certain restrictions. In addition, Realty Income may elect to retain some or all of the

10

companies' office properties following the closing of the merger. As such, the pro forma information described above is subject to change.

**Leadership and Governance**

Realty Income will continue to be led by President and Chief Executive Officer Sumit Roy and its existing senior management team. Michael D. McKee will remain Realty Income's Non-Executive Chairman of the Board of Directors. Upon closing, two VEREIT directors will be appointed to the Realty Income board.

**Insiders' Interests in the Proposed Transaction**

29. VEREIT insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will receive unique benefits in connection with the Proposed Transaction not available to Plaintiff and the other public stockholders of VEREIT.

30. Notably, certain Company insiders have secured positions for themselves with the combined company. Pursuant to the Merger Agreement, following completion of the Proposed Transaction, two members of the Board will be appointed to the Realty Income board of directors.

31. Further, if they are terminated in connection with the Proposed Transaction, VEREIT's named executive officers are set to receive substantial cash severance payments, as set forth in the following table:

| Named Executive Officer | Cash ($)[1] | Equity($)[2] | Perquisites / Benefits($)[3] | Total ($)[4] |
|---|---|---|---|---|
| Glenn Rufrano | 8,128,767 | 20,279,508 | 30,237 | 28,438,512 |
| Michael J. Bartolotta | 2,701,089 | 4,285,241 | 12,919 | 6,999,249 |
| Lauren Goldberg | 2,383,572 | 3,958,242 | 7,393 | 6,349,207 |
| Paul H. McDowell | 2,510,579 | 4,156,795 | 12,919 | 6,680,293 |
| Thomas W. Roberts | 2,574,082 | 5,024,804 | 15,615 | 7,614,501 |

**The Registration Statement Contains Material Misstatements or Omissions**

32. Defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to VEREIT's stockholders. The Registration Statement

misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

33. Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's and Realty Income's financial projections and the financial analyses supporting the fairness opinion provided by the Board's financial advisor, J.P. Morgan; and (ii) potential conflicts of interest faced by Company insiders.

***Material Omissions Concerning the Company's and Realty Income's Financial Projections and J.P. Morgan's Financial Analyses***

34. The Registration Statement omits material information regarding the Company's and Realty Income's financial projections.

35. For example, in performing its *Discounted Cash Flow Analysis*, J.P. Morgan discounted "the unlevered free cash flows that VEREIT and Realty Income are expected to generate during fiscal years 2021 through 2023[.]" Registration Statement at 68. The Registration Statement, however, fails to disclose the Company's and Realty Income's unlevered free cash flows utilized by J.P. Morgan in its financial analyses, as well as the definition of unlevered free cash flows and all underlying line items.

36. The Registration Statement also fails to disclose the line items underlying Cash Net Operating Income ("Cash NOI") and AFFO over the projection period for each of the VEREIT Standalone Projections and the Realty Income Adjusted Standalone Projections.

37. The Registration Statement omits material information regarding J.P. Morgan's financial analyses.

38. The Registration Statement describes J.P. Morgan's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of J.P.

Morgan's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, VEREIT's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

39. With respect to J.P. Morgan's *Public Trading Multiples* analyses for VEREIT and Realty Income, the Registration Statement fails to disclose the individual multiples and financial metrics for each of the companies observed, respectively.

40. With respect to J.P. Morgan's *Discounted Cash Flow Analysis* of VEREIT and Realty Income, the Registration Statement fails to disclose: (i) the Company's and Realty Income's unlevered free cash flows for fiscal years 2021 through 2023 used in the analysis; (ii) the unlevered terminal free cash flows for the Company and Realty Income; (iii) the terminal values for VEREIT and Realty Income; (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 6.5% to 7.0% for VEREIT, and 5.875% to 6.375% for Realty Income; and (v) the net debt for VEREIT and Realty Income.

41. Without such undisclosed information, VEREIT stockholders cannot evaluate for themselves whether the financial analyses performed by J.P. Morgan were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which J.P. Morgan's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

42. The omission of this material information renders the statements in the "VEREIT Unaudited Prospective Financial Information" and "Opinion of VEREIT's Financial Advisor" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Company Insiders' Potential Conflicts of Interest*

43. The Registration Statement fails to disclose material information concerning the potential conflicts of interest faced by the Company's insiders.

44. The Registration Statement sets forth:

> Following the consummation of the Mergers, the Realty Income board of directors is expected to have          members, with Mr. Michael D. McKee as the non-executive chairman of the Realty Income board of directors and two directors who served as directors on the VEREIT board of directors prior to the effective time of the Merger.

*Id.* at 83. Yet, the Registration Statement fails to disclose the details of any retention-related discussions and negotiations that occurred between Realty Income and VEREIT directors, including who participated in all such communications, when they occurred and their content. The Registration Statement further fails to disclose whether any of Realty Income's proposals or indications of interest mentioned directorship of the combined company.

45. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for VEREIT's stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

46. The omission of this information renders the statements in the "Background of the Mergers" and "Directors and Management Following the Mergers" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

47. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other VEREIT stockholders will be unable to make an informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the
Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

48. Plaintiff repeats and realleges each and every allegation contained above, as though fully set forth herein.

49. During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

50. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The Registration Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about VEREIT's and Realty Income's financial projections, the data and inputs underlying the financial valuation

15

analyses that support the fairness opinion provided by the Company's financial advisor, J.P. Morgan, and potential conflicts of interest faced by Company insiders. The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

51. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

52. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

53. Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

54. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

55. The Individual Defendants acted as controlling persons of VEREIT within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of VEREIT and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

58. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, VEREIT's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands injunctive relief, in its favor and against defendants as follows:

A.  Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B.  In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: June 24, 2021

Respectfully submitted,

/s/ Richard A. Acocelli
Richard A. Acocelli
**WEISSLAW LLP**
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*